UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROGER SCHLEBEN,<br><br>        Plaintiff,<br><br>v.<br><br>CARPENTERS PENSION TRUST FUND—<br>DETROIT AND VICINITY, and TRUSTEES<br>OF CARPENTERS PENSION TRUST<br>FUND—DETROIT AND VICINITY,<br><br>        Defendants. | Case No. 14-cv-11564<br>Honorable Laurie J. Michelson<br>Magistrate Judge  Mona K. Majzoub |

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [7]**

In 2009, Roger Schleben began receiving disability benefits from the Carpenters Pension Trust Fund—Detroit and Vicinity, a multiemployer pension plan ("the Plan") that is subject to the Employee Retirement Income Security Act ("ERISA"). In 2013, the Plan's Trustees amended the Plan to address its underfunded status. The amendment significantly reduced Schleben's monthly disability payments. After denial of his administrative appeal of the reduction in benefits, Schleben filed this action. Defendants filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. (Dkt. 7.) The Court reviewed the briefs and heard oral arguments on September 9, 2014.

The Court finds that Schleben has plausibly stated a claim under ERISA § 502(a)(3)(A) to enjoin Defendants from giving effect to an amendment that violates the following Plan provision: "[u]nless required by law, no amendment of this Plan shall be permitted to reduce the Accrued Benefit of any Participant or the benefits of any person who is already receiving

benefits on the date the benefit amendment is effective." Defendants' Motion to Dismiss the Complaint (Dkt. 7) is DENIED.

## I. MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation and internal quotation marks omitted).

In construing the complaint, the court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). The court "need not, however, accept unwarranted factual inferences." *Id.* (citing *Twombly*, 550 U.S. at 570). Nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II.  ALLEGATIONS OF THE COMPLAINT

The following allegations of the Complaint are assumed true for the purpose of deciding the Motion to Dismiss.

Schleben became disabled on April 4, 2008. (Dkt. 1, Compl. ¶ 6.) The Plan determined that Schleben met the requirements for disability benefits and awarded a disability retirement pension of $2,933.46 per month payable beginning on April 1, 2009. (Compl. ¶ 8.) At the time, the Plan provided: "Unless terminated for a reason set out in Section 5.4, the disability retirement benefit shall be payable during continued disability until the Active Participant has reached his 62nd birthday . . . ." (Compl. ¶ 10; *see also* Dkt. 7-6, Plan § 5.5.)[1] Schleben did not turn sixty-two or recover from his disability. (Compl. ¶ 11.) Section 5.4 provided that disability benefits could be automatically terminated if the Active Participant engages in employment in his or her trade or the Trustees determine that he or she is able to do so, or if the Active Participant fails to provide evidence of continuing disability or income when requested by the Trustees. (*See* Compl. ¶ 12; Plan § 5.4.) None of these applied in Schleben's case. (Compl. ¶ 13.)

Section 10.4 of the Plan provided that the Trustees could amend the Plan by majority vote but "[u]nless required by law, no amendment of this Plan shall be permitted to reduce the Accrued Benefit of any Participant or the benefits of any person who is already receiving benefits on the date the benefit amendment is effective." (Compl. ¶ 14; Plan § 10.4.)[2] Effective

---

[1] "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

[2] The Plan defines "Accrued Benefit" as "the monthly amount of the normal retirement benefit payable in a single life annuity form, as of a Participant's Normal Retirement Age, based

August 1, 2013, the Trustees adopted an amendment that reduced the amount of Schleben's benefits from $2,933.46 per month to $625.00 per month. (Compl. ¶ 16.) The Plan sent Schleben a notice that asserted the amendment was authorized by the Pension Protection Act of 2006 ("PPA"). (*See* Compl. ¶ 17.)

Schleben submitted an administrative appeal of the reduction to his benefits. (Compl. ¶ 20.) The Plan denied his appeal, stating: "The changes made to disability benefits in the All Reasonable Measures Plan do not violate Section 10.4 of the Plan document, the SPD, PPA, or ERISA as they do not affect accrued benefits and are not vested pension benefits. Fiduciary duties do not attach to the changes made as they are settlor acts." (Compl. ¶ 21.)

Schleben filed this action in April 2014, alleging two counts. The first count is against the Trustees for violation of ERISA § 404(a)(1)(D), which mandates that a pension plan be administered in accordance with its governing documents. (*See* Compl. ¶ 29.) Count I alleges that the Trustees did not act in accordance with § 10.4 of the Plan when they adopted an amendment that reduced Schleben's disability benefits although his benefits were in pay status on the effective date of the amendment. (Compl. ¶¶ 23–24.) Schleben requests that the Court enjoin the Trustees from giving effect to the amendment and order them to "make him whole for his losses since reduction of his disability retirement benefits on August 1, 2013, including the amount of his reduction, interest upon that amount, court costs, and attorney fees." (Compl. Count I, Prayer for Relief.) Count II is a claim against the Plan for an award of benefits under the Plan as it was before the amendment, with interest, costs, and attorney fees. (Compl. Count II, Prayer for Relief.)

---

on the amount of benefit accrued by such Participant at the applicable benefit rate or rates in effect as of the date such determination is made." (Plan § 1.1.) The Plan does not define the general term "benefits."

## III. ANALYSIS

Defendants argue that Schleben's complaint fails to state a claim against them for reduction of his disability benefits because "the benefits at issue are ancillary welfare-style benefits that can be reduced or even eliminated at any time by the Trustees," and "[t]he changes also did not violate the cited provision of the Plan document [§ 10.4] . . . as the Trustees did not reduce accrued benefits or any pension benefits in pay status." (Dkt. 7, Mot. at 6.) Before reaching these arguments, the Court must determine the standard of review to be applied, which requires the Court to determine the nature of Schleben's claims. As discussed below, the Court finds that Schleben's primary claim is brought under ERISA § 502(a)(3)(A) to enjoin an act that violates the terms of the plan, and that a de novo standard applies to that claim.

### A.  ERISA Standard of Review

In actions under ERISA, a de novo standard of review applies to decisions by benefit plan administrators unless "discretion has been expressly granted in the plan for the specific decision at issue." *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 529 (6th Cir. 2012). Defendants argue that a deferential standard of review applies to the Trustees' decisions here "[b]ecause the Plan gives the Board authority to interpret the terms of the Plan and make benefits determinations." (Mot. at 7.) In fact, the Plan states: "The Trustees shall have discretionary authority to make any determination *concerning eligibility for participation and benefits* hereunder, including the interpretation of the Plan, Trust, or any other relevant document used in the administration of the Trust Fund." (Plan § 8.13 (emphasis added).)

The Sixth Circuit has explained that "discretion is *not* an all-or-nothing proposition. A plan can give an administrator discretion with respect to some decisions, but not others. A fiduciary or administrator does not have discretion with respect to all aspects of a plan simply

5

because the administrator has discretion to interpret some provisions." *Anderson v. Great W. Life Assur. Co.*, 942 F.2d 392, 395 (6th Cir. 1991) (emphasis in original); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) (relying on principles of trust law to hold that a de novo standard of review applies to benefit determinations under ERISA unless the plan confers discretion, and noting that discretion "depends upon the terms of the trust." (internal quotation marks and citation omitted)); *Shy*, 701 F.3d 523, 530 (6th Cir. 2012) (holding de novo standard applied where plan gave administrator authority "to construe and interpret" the plan and "decide all questions of eligibility" but did not say the authority was discretionary and made it subject to review by a committee). The administrator "has exactly the amount and type of discretion granted by the plan, no more, and no less." *Anderson*, 942 F.2d at 395. In this case, the discretion afforded by the Plan extends only to "determination[s] concerning eligibility for participation and benefits."

To determine whether this discretionary authority applies to Schleben's claims, the Court must first determine the nature of those claims. Schleben says he brings his action in two steps: "The first, and decisive step, is an action for equitable relief to restrain the Pension Plan from implementing that portion of a plan amendment which was adopted in violation of its plan document and ERISA." (Dkt. 9, Resp. at 9.) This part of the action "arises under ERISA §§ 502(a)(2) and (3), 29 USC § 1132(a)(2) and (3)," according to the Jurisdiction section of Schleben's Complaint. (Compl. ¶ 5.) The second step is to award Schleben benefits in accordance with the Plan as it existed before the amendment. (Resp. at 9–10.) This part of the action "arises under ERISA § 502(a)(1)(B), 29 USC § 1132(a)(1)(B)." (Compl. ¶ 5.)[3]

---

[3] ERISA § 502(a) provides, in relevant part:

A civil action may be brought—

    (1)  by a participant or beneficiary—

According to Plaintiff, this two-step procedure is required by the Supreme Court's decision in *CIGNA Corp. v Amara*, 563 U.S. __, 131 S. Ct. 1866, 179 L. Ed.2d 843 (2011). In *Amara*, the beneficiaries of CIGNA's employee pension plan alleged that CIGNA's notices to them regarding significant changes it made to the plan were incomplete and misleading. *See* 131 S. Ct. at 1870–72. The district court agreed. *See id.* at 1872–75. As a remedy, the court first ordered the terms of the plan reformed and then ordered CIGNA to enforce the plan as reformed. *Id.* at 1876. The district court found that this relief was effectively authorized by ERISA § 502(a)(1)(B) (codified at 29 U.S.C. § 1132(a)(1)(B)), which states that "a civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." The parties cross-appealed, and the Second Circuit Court of Appeals summarily affirmed. *Id.* But the Supreme Court held that ERISA § 502(a)(1)(B) did not authorize the relief the district court awarded: "we have found nothing suggesting that the provision authorizes a court to alter those terms [of the plan], at least not in present circumstances, where that change, akin to the reform of a contract,

---

. . .

    (B)  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

  (2)  by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

  (3)  by a participant, beneficiary, or fiduciary

    (A)  to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

    (B)  to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a). Section § 1109 concerns liability for breach of fiduciary duty.

seems less like the simple enforcement of a contract as written and more like an equitable remedy." *Id.* at 1877.

The Court went on to state that "the types of remedies the court entered here fall within the scope of the term 'appropriate equitable relief' in § 502(a)(3)." *Id.* at 1880. Section 502(a)(3) (codified at 29 U.S.C. § 1132(a)(3)) provides that "a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Court vacated and remanded for the district court to determine whether an appropriate remedy could be imposed under ERISA § 502(a)(3).[4]

Defendants here argue that *Amara* is inapt because the issue there was whether the plan administrator properly notified participants regarding an amendment, not whether the amendment could be adopted. (*See* Dkt. 14, Reply at 2.) But Defendants do not explain why this distinction matters. The Court held in *Amara* that "[t]he power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law." *Amara*, 131 S. Ct. at 1879. And, "the District Court's remedy essentially held CIGNA to what it had promised, namely, that the new plan would not take from its employees benefits they had already accrued." *Id.* at 1880. This relief could be granted only under ERISA § 502(a)(3), not ERISA § 502(a)(1)(B), the Court held. Similarly, Schleben asks this Court to

---

[4] On remand, the district court found that reformation and surcharge were appropriate equitable remedies by which the court could award the relief under § 502(a)(3) that it had previously awarded under § 502(a)(1)(B). *Amara v. CIGNA Corp.*, No. 01-cv-2361, Memorandum of Decision on Remedies and Class Certification (D. Conn. Dec. 20, 2012). Amara appealed the decision and CIGNA cross-appealed. *Amara*, No. 01-cv-2361, Notice of Appeal (D. Conn. Feb. 1, 2013); *Amara*, No. 01-cv-2361, Notice of Appeal by CIGNA (D. Conn. Feb. 7, 2013). The Second Circuit Court of Appeals held oral arguments on February 10, 2014, and has not yet issued a decision. *Amara v. CIGNA Corp.*, No. 13-526, Docket (2d Cir.).

8

enjoin the amendment of the Plan so that he can hold Defendants to the Plan as it existed before the amendment. That is an equitable remedy that can be awarded only under ERISA § 502(a)(3).[5]

The Court therefore agrees with Schleben that his claim can be brought under ERISA § 502(a)(3). *See also Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 741 (8th Cir. 2002) (holding that plaintiff's cause of action arose under ERISA § 502(a)(3), not § 502(a)(1)(B), although plaintiff "ultimately seeks a restoration of full benefits," because "the vehicle for that requested relief is invalidation of [plan] amendments" allegedly enacted without complying with the amendment procedure set out in plan documents); *Virtue v. Int'l Bhd. of Teamsters Ret. & Family Prot. Plan*, 886 F. Supp. 2d 32, 35 (D.D.C. 2012) (finding that *Amara* required a two-step procedure under both § 502(a)(3) and § 502(a)(1)(B) where plaintiff sought to invalidate, based on ERISA's anti-cutback rule and notice requirements, a plan amendment that retroactively made him ineligible to participate).

In what appears to be an attempt to avoid this result, Defendants say that if the Court finds the Trustees violated the Plan, they "stand ready to remedy the violation immediately through an amendment, reinstate full benefits from August 1, 2013 to the date of amendment, and seek a judgment for partial dismissal of the remainder of Plaintiff's claims." (Mot. at 6.) But Schleben is the Plaintiff; it is for him to decide what relief to request, and he has asked for an

---

[5] In a related case before this Court, another participant of the Plan seeking restoration of his disability benefits on the grounds that amendment of the Plan was unlawful brought his claim (on behalf of a proposed class) solely under ERISA § 502(a)(1)(B). *Underwood v. Carpenters Pension Trust Fund—Detroit and Vicinity et al.*, No. 13-cv-14464 (E.D. Mich.). As discussed in a separately issued Opinion and Order on cross-motions for summary judgment in that case, the Court finds it can reach the same result under ERISA § 502(a)(1)(B) by enforcing the plaintiffs' rights under § 10.11 of the Plan, which states: "If any provision of this Plan is held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and this Plan shall be construed and enforced as if such provision had not been included."

injunction, not declaratory judgment. And at the hearing, Schleben's counsel indicated that this offer was not sufficient because it did not include restoration of benefits going forward.

In the first step of this action, Schleben asks the Court to review the Trustees' interpretation of § 10.4 of the Plan to determine whether that section authorized the amendment that reduced Schleben's benefits. The discretion to interpret the Plan reserved to the Trustees by § 8.13 is for determinations "concerning eligibility for participation and benefits." The amendment here had the effect of reducing Schleben's benefits. But the amendment was not in itself a "determination concerning eligibility for participation and benefits." Thus the Court need not defer to the Trustees' interpretation of § 10.4. The second step, to award Schleben benefits in accordance with the Plan as it existed before the amendment, does involve a "determination concerning eligibility for participation and benefits." In the second step of the action, therefore, the Court will accord deference to the Trustees' previous decisions regarding Schleben's eligibility for benefits under the Plan as it existed before the amendment.

Defendants argue that *Price v. Indiana Laborer's Pension Fund* (*Price I*), 632 F.3d 288 (6th Cir. 2011), requires that an arbitrary and capricious standard of review be applied here. In *Price I*, the Sixth Circuit held that because the plan at issue gave the administrator discretion to interpret its terms, an arbitrary and capricious standard of review applied. 632 F.3d at 296. As in this case, the issue in *Price I* was whether a plan amendment could terminate previously-awarded disability benefits. But the provision giving discretion to the administrator in *Price I* was much broader than the one in this case: it provided that "'[t]he Board of Trustees shall have the exclusive right and discretion to interpret the terms and provisions of the Plan . . .'" *Id.* (quoting the plan). In this case, the Plan provision that grants the Trustees discretion to interpret the Plan

is a narrower one, limited to "any determination concerning eligibility for participation and benefits." (Plan § 8.13.)

Notably, the Trustees refused to provide Schleben with a written notice of an "adverse benefit determination" when the amendment reduced his benefits. Under ERISA regulations, an "adverse benefit determination" is defined as "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit," and it triggers certain requirements, including a written explanation of the decision and the plan provisions on which it is based. *See* 29 C.F.R. § 2560.503-1(g), (m). When Schleben attempted to appeal the reduction of his benefits and complained that he was not provided the required notice, the Plan's counsel responded: "we do not believe the Disability changes made in the All Reasonable Measures Plan trigger the adverse benefit determination provisions in the federal regulations." (Dkt. 9-4, Resp. Ex. C.) Instead of providing the usual documentation for an adverse benefit determination, the Plan's counsel "enclos[ed] the September 27, 2008 Rehabilitation Plan and the Plan amendment which encapsulates the All Reasonable Measures Plan." (*Id.*) It is clear that the action the Court must review here is the amendment of the Plan, not an individual benefit determination. Unlike in *Price I*, the language of the Plan here does not require deference to the Trustee's decision to amend.

Defendants make two more arguments to force Schleben back into § 502(a)(1)(B).[6] Defendants contend that Schleben's claim must be brought under § 502(a)(1)(B) because "controlling precedent indicates that a plaintiff may not pursue a remedy pursuant to

---

[6] Defendants appear to think that a deferential standard would apply if Schleben's claim were brought under § 502(a)(1)(B). But the standard of review is determined by the scope of discretion accorded by the Plan, and the Plan does not give the Trustees discretion regarding amendment of the Plan. Thus, the Court would not accord deference to the Trustees' interpretation of § 10.4 even if it were proceeding under § 502(a)(1)(B).

[§ 502(a)(3)] when another provision provides adequate relief." (Mot. at 15 (citing *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615–16 (6th Cir. 1998).) *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (describing § 502(a)(3) as "a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy"). According to Defendants, Schleben cannot pursue a claim under both § 502(a)(1)(B) and § 502(a)(3). (Mot. at 15.)

This is not a case where the plaintiff's § 502(a)(3) claim is duplicative of his § 502(a)(1)(B) claim. The relief Schleben seeks under § 502(a)(3) is an injunction to reform the Plan, whereas the relief he seeks under § 502(a)(1)(B) is an award of benefits. This case is like *Hill v. Blue Cross & Blue Shield of Michigan*, in which the Sixth Circuit held that the plaintiffs could state claims for breach of fiduciary duty under 502(a)(3) despite also stating claims for denial of benefits under § 502(a)(1)(B) because each claim sought different relief. 409 F.3d 710, 718 (6th Cir. 2005). The court agreed with plaintiffs that "the district court erred in characterizing their fiduciary-duty claims as repackaged individual-benefits claims because their claims for breach of fiduciary duty seek plan-wide injunctive relief, not individual-benefit payments." *Id.*; *see also Thornton v. Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters Supp. Ret. & Disability Fund*, 566 F.3d 597, 617 (6th Cir. 2009) (holding plaintiff could state claims under both provisions where in addition to payment of denied benefits he sought an injunction to prohibit the Board from eliminating retiree accrued benefits in the future and to compel reformation of plan documents); *Virtue*, 886 F. Supp. 2d at 35 (finding that remedying the ERISA violations alleged would go beyond the enforcement of rights under the plan contemplated by § 502(a)(1)(B) and therefore rejecting the defendant's argument that equitable relief under § 502(a)(3) was not appropriate).

Turning to Defendants' remaining argument that Schleben's claim must be brought under § 502(a)(1)(B), Defendants argue that "there is no viable claim under ERISA § 404(a)(1)(D)" because "ERISA's fiduciary duties are not implicated where a settlor (here, the Fund's Trustees) makes a decision regarding form or structure of an ERISA plan." (Mot. at 15.) Schleben has alleged in Count I that Defendants violated ERISA by violating § 10.4 of the Plan because "ERISA § 404(a)(1)(D) requires that a pension plan be administered 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of' ERISA." (Compl. ¶ 22 (quoting 29 U.S.C. § 1104(a)(1)(D)).)

To the extent that Schleben's claim depends on § 404 (codified at 29 U.S.C. § 1104), Defendants are correct that he has not stated a claim. Section 404 is the provision of ERISA that describes fiduciary duties; the complete sentence from which Schleben quotes says that "*a fiduciary* shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . ." 29 U.S.C. § 1104(a)(1)(D) (emphasis added). The Sixth Circuit has held that a defendant is not liable under § 404 unless it was acting in a fiduciary capacity. *See DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 747 (6th Cir. 2010); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."). And the Supreme Court has held that plan amendment is not a fiduciary function. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such

13

actions as the administration of the plan's assets."); *see also Gard v. Blankenburg*, 33 F. App'x 722, 727 (6th Cir. 2002) (concluding that the holding in *Hughes Aircraft* applies to amendment of multi-employer plans by plan trustees). The Court reasoned that "an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets," so "ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." 525 U.S. at 444. Here, amending the Plan to cap the amount of disability benefits is a decision regarding the form or structure of the Plan that does not implicate fiduciary obligations. Schleben has not stated a claim for relief under ERISA § 404.

Nonetheless, Schleben's claim may proceed because it is based on a breach of the Plan's terms, not a breach of fiduciary duty. Although the Complaint references a fiduciary obligation to administer a plan in accordance with the plan documents, that is not essential to the claim. The basis of the claim is simply violation of the Plan. *Cf. Hughes Aircraft*, 525 U.S. at 760 (describing the causes of action at issue, which did not include violation of the Plan). Schleben correctly points out that ERISA § 502(a)(3) authorizes an injunction to restrain any act or practice that violates the terms of a plan, "regardless of who commits the violation." (Resp. at 20–21.) He cites *Moore v. Menasha Corp.*, 690 F.3d 444 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1643, 185 L. Ed. 2d 618 (2013), and *UAW v. Yardman*, 716 F.2d 1476 (6th Cir. 1983), as evidence that "[t]he Sixth Circuit has regularly ordered the payment of welfare benefits which were clearly promised," without regard to whether breach of that promise was undertaken as a fiduciary or settlor. (Resp. at 21–22.) Defendants argue those cases "are irrelevant because they

14

touch on the topic of vested retiree health care benefits which were contractually mandated under technical issues specific to collective bargaining agreements," whereas the benefits here "are not mandated by collective bargaining." (Dkt. 14, Reply at 3.)

Defendants are correct that there is a distinction, but the distinction is not dispositive in this context. In *Moore*, the court explained: "In deciding whether an employer offered vested healthcare benefits, this Court applies a different standard depending upon whether the promise was negotiated via collective bargaining." *Moore*, 690 F.3d at 450. But the court continued: "When a healthcare plan is not the product of collective bargaining, 'the intent to vest must be found in the plan documents and must be stated in clear and express language.'" *Id.* (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998)). In other words, the fact that the benefits at issue were not provided pursuant to a collective bargaining agreement does not excuse breach of a clear and express promise about when the benefits vest.

It is not clear whether Defendants would argue that Schleben must plead a fiduciary function to state a claim under ERISA § 502(a)(3) for breach of the terms of a plan. The Court does not see why that would be the case. The Supreme Court has expressly permitted at least some § 502(a)(3) claims against non-fiduciaries, commenting that the section "admits of no limit . . . on the universe of possible defendants." *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000) (holding that the cause of action authorized by ERISA § 502(a)(3) "extends to a suit against a nonfiduciary 'party in interest,'" for violation of ERISA's prohibition on transactions between the plan and a party in interest); *see also Moon v. BWX Technologies, Inc.*, No. 13-1888, 2014 WL 2958804, at *5 n.4 (4th Cir. July 2, 2014) (unpublished) (upholding dismissal of plaintiff's equitable estoppel claim where defendant was not acting as a fiduciary and "the only alleged ERISA violation . . . is Appellees' purported

15

breach of fiduciary duty" but commenting: "This is not to say that only ERISA fiduciaries may be sued under 29 U.S.C. § 1132(a)(3)").

The Supreme Court has also expressly permitted an action challenging amendment of a plan. In *Curtiss-Wright Corp. v. Schoonejongen*, in holding that a plan provision stating that "[t]he Company reserves the right at any time to amend the plan" set forth a valid amendment procedure as required by ERISA § 402(b), the Court said: "we do not mean to imply that there is anything wrong with plan beneficiaries trying to prove that unfavorable plan amendments were not properly adopted and are thus invalid. This is exactly what respondents are trying to do here, and nothing in ERISA is designed to obstruct such efforts." 514 U.S. 73, 84 (1995). The Court reversed and remanded for determination of whether the employer complied with the plan's amendment procedure. *Id.* at 85–86. The Third Circuit noted on remand that the district court's subject matter jurisdiction derived from "the civil enforcement provisions in ERISA, 29 U.S.C. § 1132," but neither court indicated which part of that provision they were proceeding under. *See Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 123 n.1 (3d Cir. 1998); *Schoonejongen v. Curtiss-Wright Corp.*, No. 84-4542, 1997 WL 34486781 (D.N.J. June 25, 1997).

As Schleben points out, it was necessary in *Hughes Aircraft* that the defendant be acting as a fiduciary to be liable for amendment of the plan because the claim there concerned self-dealing in relation to plan assets. (Resp. at 21.) *See* 525 U.S. at 437. The Court did not hold that liability under § 502(a)(3) can never be based on amendment of a plan. And although the defendant in *Amara* was a plan fiduciary, 131 S. Ct. at 1879, the Court found that fact significant only "insofar as an award of make-whole relief is concerned." *Amara*, 131 S. Ct. at 1880. The Court was distinguishing *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), in which the Supreme Court held that ERISA § 502(a)(3) does not authorize suits for money damages against

16

nonfiduciaries. Schleben is not seeking money damages under § 502(a)(3). That Defendants were not performing a fiduciary function when they amended the Plan is therefore not fatal to Schleben's § 502(a)(3) claim.

## B.  Plausibility of the Claim

Schleben plausibly states a claim that Defendants violated the Plan when they enacted an amendment that reduced Schleben's disability benefits. Section 10.4 of the Plan states: "[u]nless required by law, no amendment of this Plan shall be permitted to reduce the Accrued Benefit of any Participant or the benefits of any person who is already receiving benefits on the date the benefit amendment is effective." (Compl. ¶ 14; Plan § 10.4.)

Defendants focus on the phrase "Accrued Benefit" to argue that the Plan did not prohibit the amendment because Schleben's disability benefits are not Accrued Benefits. (See Mot. at 13–14.) In a footnote, they dismiss the rest of the provision, without any support from law or reason: "The provision regarding 'receiving benefits on the date the benefit amendment is effective' only applies to receiving 'Accrued Benefits.'" (Mot. at 13 n.2.) This is a strained reading of the provision. The plain language of the Plan does not contain any indication that "the benefits of any person who is already receiving benefits" only applies to "Accrued Benefits."  Defendants' reading might be plausible if the provision stated that no amendment was permitted to reduce "the Accrued Benefit of any Participant or person who is already receiving benefits." But that is not what it says. The placement of the "or" creates two alternatives: (1) "the Accrued Benefit of any Participant," and (2) "the benefits of any person who is already receiving benefits." Moreover, if the word "benefits" in the phrase "the benefits of any person who is already receiving benefits" were intended to refer back to "Accrued Benefit," then surely it would likewise be capitalized. *Cf. Kay v. Minacs Grp.*, No. 13-1974, 2014 WL 4375980, at *2 (6th Cir.

Sept. 5, 2014) (finding it significant that "Policies and Procedures" was capitalized in an arbitration provision but not capitalized elsewhere in the employee handbook). The Court sees no reason to read one alternative as a limit on the other, and Defendants do not offer any. The Court concludes that Schleben's claim does not depend on the definition of "Accrued Benefit."

Nor does the Court see any reason to read the provision as applying only to "the benefits of any person who is already receiving *pension* benefits," as Defendants argued at the hearing. When asked why the Court should read the word "pension" into the provision, Defendants' counsel argued that the provision was ambiguous. He said that *Price v. Bd. of Trustees of Indiana Laborer Pension Fund* (*Price II*), 707 F.3d 647 (6th Cir. 2013), teaches that "lack of specificity merely creates ambiguity." *Price II*, 707 F.3d at 652. But in *Price II* there were two potentially conflicting provisions that created ambiguity. The Plan said first that "[a]ny amendment to the Plan may be made retroactively by the majority action . . . ," and then in the next paragraph: "no amendment shall be made which results in reduced benefits for any Participant whose rights have already become vested under the provisions of the Plan on the date the amendment is made." *Price II*, 707 F.3d at 649.

It was also significant in *Price II* that the Plan used the word "vested" to describe the benefits that could not be reduced by amendment. *Id.* at 651–52 (referencing the court's analysis of the term "vested" in *Price I*). The court found that "an analysis of the context in which the word ["vested"] is used shows that it applies to retiree benefits and not disability benefits." *Price I*, 632 F.3d at 297. The court concluded that the term "vested" was synonymous with the term "accrued," and that disability benefits were not included in "Accrued Benefit." In contrast here, the Plan specifically broadens the scope of the amendment provision's protection beyond "Accrued Benefit" to include "the benefits of any person who is already receiving benefits." The

18

language of the provision is clear, and the Court will not read a limitation into the provision that is not supported by its plain language. *See Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (holding that federal common law governs the interpretation of ERISA plans, citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987), and "the plain language of an ERISA plan should be given its literal and natural meaning").

Another court in this district came to a similar conclusion in *Williams v. Target Corp.*, No. 12-cv-11775, 2013 WL 5372877, 2013 U.S. Dist. LEXIS 137276 (E.D. Mich. Sep. 25, 2013) (attached to Plaintiff's Response as Ex. G, Dkt. 9-8). There, the plan provided: "The Company . . . reserves the right to amend, discontinue, or terminate the Plan at any time . . . . Any change or cancellation would not effect [sic] benefits of an established claim." 2013 WL 5372877 at *5. The defendants argued that the provision should be read to mean that "no amendment would require a claimant to return benefits already received or alter benefits for which payments have become due," citing *Hackett v. Xerox Corporation Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003) (holding that a plan provision stating no amendment could "diminish any rights accrued for the benefit of the participants prior to the effective date of the amendment" meant only that that no amendment could require a participant "to return benefits he has already received or alter benefits for which the payments have become due"). The *Williams* court rejected the defendants' proposed reading:

> Unlike the plan language at issue in *Hackett*, the provision at issue in the instant case states that "[a]ny change or cancellation would not effect benefits of an established claim"—it does not state that "[a]ny change or cancellation would not effect accrued benefits of an established claim." In other words, where the *Hackett* provision prohibited the application of amendments that would affect accrued benefits, the provision at issue here prohibits the application of amendments that would affect all "benefits of an established claim." Therefore, interpreting the phrase "benefits of an established claim" to mean "benefits that have already been paid or become due" would read into the phrase a limitation that is not present in its plain language. Absent explicit language indicating that

> this limitation on the right to amend is confined to plan amendments that would affect already-accrued benefits (such as the language at issue in *Hackett*) the Court will not read this limitation on the reservation-of-rights clause so narrowly.

*Id.* at *7. The court noted that this interpretation, "which enforces the plain language of the provision at issue," best aligns with the purpose of the ERISA statute "to protect contractually defined benefits." *Id.* Similarly here, the Court will not adopt a reading that distorts the plain language of the Plan.[7]

Defendants also argue that the amendment is permitted by law. (*See* Mot. at 8–12.) They are correct that the reduction of Schleben's disability benefits is not expressly prohibited by ERISA, although he is already receiving them. *See Price I*, 632 F.3d at 292 ("[D]isability benefits are a welfare-type benefit under ERISA, and as such, ERISA's statutory vesting requirements do not apply."); *McBarron v. S&T Indus.*, 771 F.2d 94, 97 ("Pursuant to ERISA, disability and other types of non-retirement plans, including those that are sub-sections of comprehensive pension plans, are exempt from the non-forfeiture provisions of the act.").

But Schleben's claim is based on the terms of the Plan, not ERISA's anti-cutback or non-forfeiture provisions. As the Sixth Circuit noted, "a welfare benefit may be terminated at any time *so long as the termination is consistent with the terms of the plan*." *Price II*, 707 F.3d at 651 (emphasis added). (*See* Mot. at 10 (quoting this part of *Price II*, with emphasis).) Schleben maintains that the amendment was not consistent with the terms of the Plan, which prohibits amendments that reduce the benefits of any person who is already receiving benefits.

---

[7] The Court has found that a de novo standard of review applies. But even if the Plan gave the Trustees discretion to interpret § 10.4, the plain language of the Plan is not reasonably subject to any other interpretation. It was arbitrary and capricious for the Trustees to conclude that "[t]he changes made to disability benefits in the All Reasonable Measures Plan do not violate Section 10.4 of the Plan document . . . as they do not affect accrued benefits and are not vested pension benefits." (Compl. ¶ 21.)

20

The Plan does authorize amendments that reduce such benefits if the amendment is "*required* by law." The August 2013 amendment that reduced Schleben's benefits was part of an "All Reasonable Measures Plan" adopted under the Pension Protection Act of 2006 ("PPA"). The PPA was enacted in 2006 to address "a confluence of economic circumstances—including the actual or forecasted termination of various large pension plans and the erosion of many employees' retirement savings" that "threatened ERISA's system for federally insuring multiemployer pension plans." *Trustees of Local 138 Pension Trust Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 130 (2d Cir. 2012) (addressing an employer's withdrawal from a pension fund). The PPA requires the plan sponsor of a multiemployer plan that is in critical status to adopt a rehabilitation plan. 29 U.S.C. § 1085(e). Defendants' motion argues that "PPA allows for a cutback in certain benefits provided under ERISA, to help pension plans improve their funding status." (Mot. at 12.) Allowing for a cutback is, of course, not the same as requiring one.

But in their Reply brief, Defendants argue for the first time that "the adoption of the All Reasonable Measures Plan, that included the reduction of ancillary disability benefits was in the Trustees' view, a necessary step required by the law, and thus, in keeping with that provision of the Plan document." (Reply at 4.) Defendants cite no supporting case law. Instead, they cite the PPA's description of the rehabilitation plan that is required of a plan in critical status:

> A rehabilitation plan is a plan which consists of—
>
> (i) actions, including options or a range of options to be proposed to the bargaining parties, formulated, based on reasonably anticipated experience and reasonable actuarial assumptions, to enable the plan to cease to be in critical status by the end of the rehabilitation period and may include reductions in plan expenditures (including plan mergers and consolidations), reductions in future benefit accruals or increases in contributions, if agreed to by the bargaining parties, or any combination of such actions, or
>
> (ii) if the plan sponsor determines that, based on reasonable actuarial assumptions and upon exhaustion of all reasonable measures, the plan can not reasonably be

21

expected to emerge from critical status by the end of the rehabilitation period, reasonable measures to emerge from critical status at a later time or to forestall possible insolvency (within the meaning of section 1426 of this title).

29 U.S.C. § 1085(e)(3)(A). Defendants' argument appears to be not that the PPA expressly required the reduction in Schleben's benefits, but that the Trustees reasonably decided it was necessary. The Court has determined that the Plan does not require deference to the Trustees regarding the amendment of the Plan. And the Court sees nothing on the face of the cited PPA provision that requires the disability benefit caps that reduced Schleben's benefits. Defendants have not shown that the amendment was required by law.

Taking the allegations of the Complaint as true, Schleben has stated a plausible claim that Defendants violated § 10.4 of the Plan by adopting an amendment that reduced benefits Schleben was already receiving. As to the claim for benefits in Count II, Schleben has indicated that it "flows mechanically" from Count I, and Defendants have not made any separate argument about it.

## IV. CONCLUSION AND ORDER

The Court finds that Schleben has plausibly stated a claim under ERISA § 502(a)(3)(A) to enjoin Defendants from giving effect to an amendment that violates the following Plan provision: "[u]nless required by law, no amendment of this Plan shall be permitted to reduce the Accrued Benefit of any Participant or the benefits of any person who is already receiving benefits on the date the benefit amendment is effective." Defendants' Motion to Dismiss the Complaint (Dkt. 7) is DENIED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  September 15, 2014

22

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 15, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson